IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **KYLE BATEMAN, JR.,**<br>*Plaintiff,*<br><br>v.<br><br>**XO COMMUNICATIONS SERVICES, LLC,**<br>*Defendant.* | § § § § § § § § § |

CIVIL ACTION NO. 14-378

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Kyle Bateman, Jr. ("Mr. Bateman") and files this, his Original Complaint and Jury Demand against Defendant XO Communications Services, LLC. ("XO" or "Defendant") concerning certain grievances of discrimination and retaliation arising under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.,* as amended and the Texas Commission on Human Rights Act, TEX. LAB. CODE § 21.001, *et seq*. In support thereof Plaintiff respectfully states as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. § 1331 and 42 U.S.C. §12117(a).  The Court has supplemental jurisdiction over Plaintiff's claims under the Texas Commission on Human Rights Act and Texas Law because those claims are so related to the claims in the action with the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. § 1367.

2. Venue is proper in this district and division under 42 U.S.C. §12117(a) (incorporating 42 U.S.C. §2000e-5(f)(3)) and 28 U.S.C. § 1391 because Defendant's principle office is in Collin County, Texas.

## II. PARTIES

3. Plaintiff is a natural person and a resident of Collin County, Texas.

4. Defendant XO Communications Services, LLC, is a Foreign Limited Liability Company registered and doing business in the state of Texas and can be served with process through its registered agent for service, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company – 211 E. 7th Street, Suite 620, Austin, TX 78701-3218 USA.

5. Defendant is an a telecommunications company that provides managed services and converged Internet Protocol network services that combine voice, Internet access, and private data networking for small and medium sized companies, enterprises, national and government accounts. XO's headquarters and Plano office is located at 2700 Summit Ave., Plano, TX 75875. XO employs over 3000+ people nationwide.

6. XO is an "employer" within the meaning of 42 U.S.C. §12111(5)(A) and Tex. Lab. Code § 21.002(8).

## III. FACTUAL BACKGROUND

7. On August 16, 2013, Mr. Bateman was wrongfully terminated by Defendant, without legitimate reason and clearly tying the termination to his disability, perceived disability, and in retaliation to his protected activity of taking short term disability leave.

8. Mr. Bateman suffers from severe and disabling migraine headaches for which he seeks help from a medical professional, including the prescription of medication.

9. Mr. Bateman began working for Defendant on October 22, 2012, as a Web Engineer III (Senior SharePoint Administrator). Mr. Bateman was hired by manager Brad Brazeal.

10. As a Web Engineer III (Senior SharePoint Administrator), Mr. Bateman was providing support for Defendant's web based environment, including development, test and

production. Specifically, Mr. Bateman's primary role was to work on installing and configuring the new SharePoint 2013 system.

11. SharePoint is an internally or externally-faced portal (developed by Microsoft) for companies that allow employees across enterprises to engage and collaborate with other people, share ideas, organize information, collaborate on documents, and allows IT departments to manage cost, risk and their time.

12. Defendant's implementation of SharePoint 2013 primarily consisted of two environments: (1) "stage/testing environment," and (2) "production environment."

13. The "stage/testing environment" was built out by a four (4) person team, led by Senior Manager Brad Brazeal (Mr. Bateman's Direct Supervisor), Senior Engineer Kyle Bateman, Junior SharePoint Administrator Felix Castro, and Developer Isaac Chow.

14. After building out the "stage/testing environment," Defendant, at SharePoint's/Microsoft's recommendation, decommissioned and brought down the "stage/testing environment" in order to match Defendant's new 2013 "production environment." The team had already begun building the new 2013 "production environment" when the "stage/testing environment" was decommissioned.

15. The "production environment" team was being managed and led by Bryan Singleton. Brad Brazeal had been promoted and moved to another department.

16. Due to the decommissioning of the "stage/testing environment," the entire Sharepoint environment was in disarray.

17. Due to the disarray and other working conditions within the office, Mr. Bateman's existing migraine headaches became more frequent and intense, to the point that he would become unable to see his computer screen to work.

18. On or about June 17, 2013, Mr. Bateman requested to take medical leave due to his migraine headaches. Mr. Bateman had previously taken time off work due to his migraine headaches, something that his supervisor Bryan Singleton was aware.

19. Prior to going on short-term disability leave, supervisor Bryan Singleton told Mr. Bateman that he was going to take his job and give it to Junior Administrator/Engineer Felix Castro. Mr. Castro does not suffer from a disability.

20. At this point it was becoming very clear to Mr. Bateman that Defendant was not comfortable with him being disabled. Mr. Singleton perceived and regarded Mr. Bateman as having a physiological impairment that would prevent Mr. Bateman from performing his job on a long term basis.

21. In late June, 2013, Mr. Bateman began increased treatment for his disability. As part of the treatment, he took a leave of absence under Defendant's short term disability policy.

22. On June 25, 2013, Defendant informed Mr. Bateman that he did not qualify for leave under the Family Medical Leave Act, as he did not yet meet the 12-month length of service requirement under the statute.

23. On July 1, 2013, Mr. Bateman met with Anita S. Namburi, M.D. of the Dallas Diagnostic Association at Baylor Hospital, Plano Branch. Dr. Namburi recommended initiating medical leave, referring Mr. Bateman to receive treatment from a Dr. Ramirez.

24. On July 8, 2013, Mr. Bateman completed additional paperwork for requesting short-term disability leave.

25. On July 11, 2013, Defendant informs Mr. Bateman again that he does not qualify for FMLA leave, and that his medical provider (Dr. Ramirez) is required to return paperwork regarding Mr. Bateman's disability by July 18, 2013.

26. On July 18, 2013, Mr. Bateman returns the requested paperwork. In an email response, Defendant approves Mr. Bateman for short term disability leave starting retroactively on June 17, 2013, with a return to work date of August 1, 2013.

27. In the same email, Defendant proceeds to tell Mr. Bateman that despite his disability leave, there are "no assurance[s] that the same or equivalent position will be available to you" and that Mr. Bateman is "not eligible for job protection, your employment with XO Communications may be terminated."

28. Again, Defendant was making it very clear to Mr. Bateman that they were not comfortable with him being disabled. Defendant perceived and regarded Mr. Bateman as having a physiological impairment that would prevent him from performing his job on a long term basis.

29. During this time period, Mr. Bateman continues regular visits with Dr. Ramirez, running various studies to determine the root cause of Mr. Bateman's migraine headaches. Due to the ongoing studies, Dr. Ramirez recommends an extended leave for Mr. Bateman.

30. On August 2, 2013, Mr. Bateman requests additional short-term disability leave.

31. On August 12, 2013, Defendant responds to Mr. Bateman, approving his disability leave with a return to work date of September 3, 2013.

32. In further response to Mr. Bateman's request for additional leave, on August 16, 2013, while on short term disability leave, Mr. Bateman received a phone call from Manager Bryan Singleton and Human Resource representative Norma Jaminet. Bryan Singleton stated that he had a Microsoft expert come in and look over the SharePoint environment being developed by their engineering team. Singleton proceeded to tell Mr. Bateman that he was fired because Bateman, and Bateman alone, misconfigured the SharePoint environment. In response, Mr. Bateman said that this wasn't true, that Mr. Singleton knew better based on where they were in

building the new environment. Ms. Jaminet quickly stepped in, stating that the conversation was finished, but that Mr. Bateman could continue to receive his benefits.

33. Mr. Bateman was terminated while still on an approved short-term disability leave.

34. Defendant's stated reason for terminating Mr. Bateman is false and pretextual. Defendant's termination of Mr. Bateman was done without legitimate reason and was clearly tied to his disability, perceived disability, and in retaliation to his protected activity of taking short term disability leave.

35. Prior to being terminated, at no point was Mr. Bateman ever told he was performing in an unacceptable manner. Mr. Bateman was shocked by the termination. In addition, while on leave, Mr. Bateman was denied access to his work email, preventing him from seeing what was going on with the SharePoint project and/or to advise, if necessary.

36. Mr. Bateman was also denied access to the benefits portal, preventing him from seeing what his benefits were while on disability leave.

37. Defendant fired Mr. Bateman while his medical provider was finding the root cause of his disability, before there was a chance to provide any reasonable accommodations. Defendant made no attempts to engage in providing Mr. Bateman any reasonable accommodations.

38. Three days after the termination, on August 19, 2013, Mr. Bateman filed a complaint based on disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

39. On October 16, 2013, Defendant then proceeded to deny Mr. Bateman extension of his medical benefits, preventing him from continuing his medical treatment.

40. In its active state, Mr. Bateman's physiological and mental impairment, migraine headaches, is a disability as defined by the ADAAA because it is an impairment that would substantially limit him in various major bodily functions – i.e. nervous system (neurological/brain) and respiratory system,[1] as well as substantially limiting him in major life activities – i.e. seeing, sleeping, breathing, reading, concentrating, thinking, communicating, and working.

41. Severe migraine attacks are classified by the World Health Organization as among the most disabling illnesses, comparable to dementia, quadriplegia and active psychosis.[2]

42. The ADA Amendments Act of 2008 (ADAAA) applies to Plaintiff's ADA claims of wrongful termination because those actions took place in 2009.[3] Under the ADAAA, Plaintiff's disability must be assessed in its active state, not in remission.[4] Furthermore, his disability must also be assessed without regard to mitigating measures like medical treatments.[5] Mr. Bateman currently takes Sumatriptan, Butalbita, Topiramate, Dymista, Flonase, and various over the counter medications under his doctor's supervision.

43. Mr. Bateman timely filed an EEOC and TWC charge of discrimination for disability discrimination and retaliation on August 19, 2013. Mr. Bateman requested a notice of right to sue letter from the EEOC on June 11, 2014 which was co-filed with the Texas Workforce Commission Civil Rights Division. This suit is being filed within 90 days of Plaintiff having received the notice of right to sue letter from the EEOC.

---

[1] Under the ADAAA, "major bodily function" is a new classification of "major life activities."

[2] The long drought: the dearth of public funding for headache research – RE Shapiro, Univ. of Vermont – Neurology, and PJ Goadsby, Inst. Of Neurology, London. – Blackwell Publishing, Ltd., Cephalalgia, 2007, 27, 991-994.

[3] Pub. L. 110–325, § 8, 122 Stat. 3553 (Sep. 25, 2008), codified at, e.g., 42 U.S.C. § 12101 (Note).

[4] 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii).

[5] 42 U.S.C. § 12102(4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(vi).

## IV. CAUSES OF ACTION

### A. DISABILITY DISCRIMINATION AND RETALIATION UNDER THE ADA, AS AMENDED, AND THE TEXAS LABOR CODE

44. Plaintiff incorporates the above paragraphs as if fully stated herein.

45. Defendant's actions, including but not limited to Defendant's termination of Plaintiff, were undertaken because of Plaintiff's disabilities and/or perceived disabilities. These actions constituted a violation of both the ADA, as amended, and the Texas Labor Code.

46. Due to Defendant's complained of actions, Plaintiff has suffered, and continues to suffer, damages, which he hereby seeks, including but not limited to lost wages, both past and future, including but not limited to the value of lost income, benefits, pension, etc.

47. As a further result of Defendant's discriminatory actions, Plaintiff has suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary damages, for which he hereby sues.

48. Defendant's above referenced actions were willful and done with malice and/or done with reckless indifference, entitling Plaintiff to punitive damages under the Texas Labor Code, which he hereby seeks.

49. Because of the above actions of Defendant, Plaintiff has retained counsel and has and will incur attorney's fees and costs in connection with this litigation. Therefore, Plaintiff seeks attorney's fees and costs of suit.

## V. JURY DEMAND

50. Plaintiff hereby demands a jury trial on all issues, claims, actions, and defenses against Defendant.

## VI. PRAYER

WHEREFORE, Plaintiff Kyle Bateman respectfully requests that the above-named Defendant, XO Communications, LLC be cited to appear in this matter and that, after jury trial by proof, Plaintiff take judgment against Defendant as follows:

a. Judgment against Defendant for lost wages, benefits, both back pay and front pay;

b. In the alternative to front pay, judgment against Defendant reinstating Plaintiff to his position of employment, equivalent position of employment, or the position of employment he would have enjoyed but for the discrimination, if reinstatement is deemed feasible;

c. Judgment against Defendant for compensatory damages including emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life;

d. Judgment against Defendant for punitive damages to the extent allowed under the law;

e. Judgment against Defendant for Plaintiff's reasonable attorney's and expert's fees, and costs of suit;

f. Prejudgment and post-judgment interest in the maximum amount allowed by law, until paid in full;

g. Such other and further legal and/or equitable relief to which Plaintiff may be justly entitled, as this court may deem proper.

Respectfully submitted,

GREENFIELD LAW, PLLC
4330 Travis St., Suite 116
Dallas, Texas 75205
Phone: (214) 642-7486
Email: asg@adamgreenfieldlaw.com

Dated: June 11, 2014            By: */s/ Adam S. Greenfield*
                                                           Adam S. Greenfield
                                                           ATTORNEY-IN-CHARGE
                                                           State Bar No. 24075494